NOT FOR PUBLICATION                          [Dkt. No. 6]

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW JERSEY

---

SHALOM PENTECOSTAL CHURCH,           Civ. No. 11-4491
et al.,                                  (RMB/AMD)


               Plaintiffs,

        v.                               **OPINION**

JANET NAPOLITANO, et al.,

               Defendants.

---


Appearances:

William A. Stock, Esquire
Klasko, Rulon, Stock & Seltzer, LLP
1800 John F. Kennedy Blvd.
Philadelphia, Pennsylvania 19103
        Attorney for Plaintiffs

Melissa Sher Leibman, Esquire
U.S. Department of Justice
P.O. Box 868
Ben Franklin Station
        Attorney for Defendants

**BUMB,** United States District Judge:

     Plaintiffs Shalom Pentecostal Church (the "Pentecostal

Church" or the "Church") and its Pastor, Carlos Alencar

("Alencar"), filed this case challenging the decision of the

United States Citizenship and Immigration Service ("USCIS") to deny the Form I-360 special immigrant religious worker visa petition filed by the Church on behalf of Alencar.  [See Docket No. 1, Complaint ("Compl."), ¶ 1].  Plaintiffs named as defendants Janet Napolitano, Secretary, Department of Homeland Security, Alejandro Mayorkas, Director, U.S.C.I.S., Rosemary Langley, Melville, Director of the California Service Center of USCIS, and Robert P. Wiemann, Director, USCIS Administrative Appeals Office (collectively, the "Defendants").  Defendants have moved to dismiss.  For the reasons that follow, that motion is DENIED, in part, and GRANTED, in part.

I.   Background[1]

    A.   Alencar Enters Into The United States And Works For
         The Pentecostal Church

     On June 17, 1995, Alencar, a citizen of Brazil, entered the United States with his wife and two children on a B-2 nonimmigrant visitor's visa for pleasure.  Compl., ¶ 26. Under the visa, Alencar and his family were authorized to stay in the United States until December 16, 1995.  Compl., ¶ 26. However, Alencar could not lawfully engage in employment under the B-2 visa in the United States (8 U.S.C. § 1101(a)(15)(B); 8

---

[1]   The allegations contained in Plaintiff's Complaint are accepted as true
      for purposes of the motion to dismiss.

C.F.R. §§ 214.2(b)(2),(e))[2] and Alencar did not otherwise obtain employment authorization.  Compl., ¶ 27.

Despite Alencar's authorized status expiring in 1995 and lack of work authorization, Alencar has remained in unlawful status in the United States since then and has served as a religious minister for the Church since 1998.  Compl., ¶¶ 28, 29.

> B.    The Pentecostal Church Submits An I-360 Petition On Alencar's Behalf And It Is Denied

On April 1, 2009, the Pentecostal Church filed an I-360 petition, on Alencar's behalf, for Alencar to obtain classification as a "special immigrant."  Compl., ¶ 31. Approval of the I-360 petition and classification as a "special immigrant" is the first step in obtaining a "special immigrant" visa.  Ruiz-Diaz v. U.S., 618 F.3d 1055, 1058 (9th Cir. 2010); Shia Ass'n of Bay Area v. U.S., 849 F. Supp. 2d 916, 918 (N.D.

---

[2]    USCIS's regulation prohibiting employment for B-2 nonimmigrant visitor visa holders provides as follows:  (e) Employment. A nonimmigrant in the United States in a class defined in section 101(a)(15)(B) of the Act as a temporary visitor for pleasure . . . may not engage in any employment.  Any other nonimmigrant in the United States may not engage in any employment unless he has been accorded a nonimmigrant classification which authorizes employment or he has been granted permission to engage in employment in accordance with the provisions of this chapter.  A nonimmigrant who is permitted to engage in employment may engage only in such employment as has been authorized.  *Any unauthorized employment by a nonimmigrant constitutes a failure to maintain status* within the meaning of section 241(a)(1)(C)(i) of the Act. 8 C.F.R. § 214.1(e)(emphasis added).

Cal. 2012).[3]  An immigrant whose special immigrant visa petition has been approved is then eligible, if other conditions are met, for adjustment of status to United States permanent resident.  8 U.S.C. § 1255; 8 C.F.R. § 245.2(a)(2)(i)(B).

In Alencar's case, the Church asserted that Alencar qualified for "special immigrant" status under 8 U.S.C. § 1101(a)(27)(C) (the "Statute"), which provides that certain religious workers can qualify as special immigrants.  Under that provision, the term "special immigrant" includes:

> (C) an immigrant, and the immigrant's spouse and children if accompanying or following to join the immigrant, who—
>
> > (i) for at least 2 years immediately preceding the time of application for admission, has been a member of a religious denomination having a bona fide nonprofit, religious organization in the United States;
> >
> > (ii) seeks to enter the United States—
> >
> > > (I) solely for the purpose of carrying on the vocation of a minister of that religious denomination,
> > >
> > > (II) before September 30, 2015, in order to work for the organization at the request of the organization in a professional capacity in a religious vocation or occupation, or

---

[3]  8 U.S.C. § 1153(b)(4) authorizes the issuance of visas to "special immigrants."  8 U.S.C. § 1154(a)(1)(G)(i) authorizes the filing of petitions to be classified as a "special immigrant." 8 CFR § 204.5(a) sets out Form I-360 as the appropriate petition for classification as a special immigrant religious worker.

(III) before September 30, 2015, in order to work for the organization (or for a bona fide organization which is affiliated with the religious denomination and is exempt from taxation as an organization described in section 501(c)(3) of Title 26) at the request of the organization in a religious vocation or occupation; and

(iii) has been carrying on such vocation, professional work, or other work continuously for at least the 2-year period described in clause (i).

The United States Department of Homeland Security has promulgated an additional regulatory requirement (the "Regulation") for the religious worker special immigrant visa petition that is relevant here – that any qualifying religious work performed in the United States must be performed under lawful immigration status in the United States. 8 C.F.R. § 204.5(m)(4)(listing, as one of the qualifications for approval of special immigrant religious worker visa petition, that any work performed in the United States be performed "in lawful immigration status in the United Sates").

In support of the petition, the Church submitted evidence that the Pentecostal Church was a bona fide, non-profit religious organization and that Alencar had been employed by the Church for over two years prior to the application.  Compl., ¶ 31. However, the Pentecostal Church admitted in the I-360 Petition, as it does in its Complaint here, that Alencar was not

in lawful immigration status, nor authorized to engage in employment within the United States.  Compl., ¶ 31; Compl., Ex. 1.

On July 8, 2009, the USCIS denied Plaintiff's I-360 Petition because Alencar had not performed qualifying full-time work in lawful immigration status.  Compl., ¶ 32.  On March 17, 2010, the USCIS Administrative Appeals Office dismissed the appeal taken by the Pentecostal Church, upholding the denial of the petition because Alencar was not in lawful status while working for the Pentecostal Church as required by the Regulation.  Compl., ¶ 33.

C.   Plaintiffs File This Action

On August 3, 2011 Plaintiffs filed a Complaint in this Court.  Plaintiffs claim that the denial of the I-360 petition was improper because the Regulation, which was the basis for the denial, is itself illegal for three separate reasons: (1) because it an *ultra vires* regulation that contravenes the Statute, 8 U.S.C. § 1101(a)(27)(C) (Compl., ¶ 36); (2) that the Regulation violates the Religious Freedom Restoration Act ("RFRA") (Compl., ¶ 37); and (3) that the Regulation violates the First Amendment and the Equal Protection Clause of the United States Constitution (Compl., ¶ 38).  Plaintiffs claim

that this suit is properly brought under several acts, including the Administrative Procedures Act.  Compl., ¶ 14.

II.  Analysis

As discussed above, Defendants have moved to dismiss the case.  They argue that dismissal is warranted on two grounds. First, they argue, that Plaintiffs' claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1)[4] because Plaintiffs lack standing.[5]  Second, they argue that Plaintiffs have failed to state a claim under Federal Rule of Civil Procedure 12(b)(6).  The Court addresses each argument below.

A.  Standing

To bring suit in federal court, a plaintiff must establish standing under Article III of the United States Constitution. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998); Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  The requirements for Article III constitutional standing "ensure that plaintiffs have a personal stake or interest in the outcome of the proceedings, sufficient to

---

[4]    Because standing is a jurisdictional matter, lack of standing is properly asserted under Fed. R. Civ. P. 12(b)(1) as Defendants have done.  In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012).

[5]    Defendants originally only sought the dismissal of Alancar on standing grounds.  However, on March 7, 2012, at a hearing on Defendants' motion to dismiss, Defendants expanded their standing argument to include the Pentecostal Church and the Court ordered, and the parties completed, supplemental briefing to address the issue.

warrant their invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on their behalf." Ballentine v. United States, 486 F.3d 806, 814 (3d Cir. 2007)(citing Khodara Envtl., Inc. v. Blakely, 376 F.3d 187, 193 (3d Cir. 2004)).

Article III standing has three elements:

(1)   "the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which was (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical";

2)   "there must be a causal connection between the injury and the conduct complained of"; and

(3)  "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 560-61.

Injury in fact requires more than an injury to a cognizable interest; it requires that the party seeking review be among the injured. Id. at 563. A party must show a "substantial likelihood" that the relief sought would redress the alleged injury. Lujan, 504 U.S. at 561.

Where, like here, the suit is under the Administrative Procedures Act, the plaintiff must, in addition to demonstrating constitutional standing under Article III, show that he has "prudential standing" by demonstrating that the interest "he asserts [is] arguably within the zone of interests to be

8

protected or regulated by the statute that he says was violated." Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak, 132 S.Ct. 2199, 2210 (2012)(quotation and citation omitted). That test "is not meant to be especially demanding" and "forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." Id. (quotation and citation omitted).

Defendants make two standing arguments. First, they argue that Alencar, as merely a beneficiary of the I-360 Petition, has not suffered a constitutional concrete injury in fact, as necessary for standing. This Court disagrees. To be sure, a number of courts have held that the beneficiary of a visa petition, like Alencar, has no standing to challenge visa petition proceedings. Echevarria v. Keisler, 505 F.3d 16, 18 (1st Cir. 2007)(holding that beneficiary of Form I-130 relative petition did not have standing to challenge petition denied based on marriage fraud); Kale v. U.S. I.N.S., 37 F. App'x 90, at *2 (5th Cir. 2002); George v. Napolitano, 693 F.Supp.2d 125, 130 (D.D.C. 2010); Li v. Renaud, 709 F. Supp. 2d 230, 236 n.3 (S.D.N.Y. 2010); Zhong v. Novak, No. 08-4597, 2010 WL 3302962, at *7 n.12 (D.N.J. Aug. 18, 2010); Ibraimi v. Chertoff, No. 07-

cv-3644, 2008 WL 3821678, at *3 (D.N.J. Aug. 12, 2008); Blacher
v. Ridge, 436 F. Supp. 2d 602, 606 n.3 (S.D.N.Y. 2006).  These
Courts, however, have grounded that finding in the regulatory
requirement that only the petitioner, and not the petition's
beneficiary, are considered an "affected party" with "legal
standing" to file an appeal of an unfavorable visa petition
decision.  Id. (relying on 8 C.F.R. § 103.3(a)(1)(iii)(B)).  But
whether a litigant has constitutional standing to sue in federal
court "is not dependent on any agency regulation."  Ore v.
Clinton, 675 F. Supp. 2d 217, 223 (D. Mass. 2009).  And, here,
Alencar clearly suffered a concrete injury - the denial of the
I-360 Petition. Id.; Abboud v. I.N.S., 140 F.3d 843, 847 (9th
Cir. 1998)(holding that beneficiary of Form I-130 relative
petition had standing to challenge petition denied based on
death of petitioner); Bangura v. Hansen, 434 F.3d 487, 500 (6th
Cir. 2006); Ghaly v. I.N.S., 48 F.3d 1426, 1434 (7th Cir. 1995);
Taneja v. Smith, 795 F.2d 355, 358 (4th Cir. 1986).

    And, while Defendants have not raised a prudential standing
argument, this Court cannot say that the interests of the
intended beneficiaries of special immigrant visas "are so
marginally related to or inconsistent with the purposes implicit
in the statute that it cannot reasonably be assumed that

10

Congress intended to permit" them to sue.  Bangura, 434 F.3d at
499-500 (concluding that beneficiaries were within zone of
interest of statute); Ghaly, 48 F.3d at 1434 n.6 (same); Taneja,
795 F.2d at 357 n.7 (same); Velasquez v. U.S. D.O.J., No. C98-
3934, 1999 WL 300686, at *3 n.6 (N.D. Cal. May 1, 1999)(finding
that immigration petition beneficiary had standing to sue
because she had been adversely affected by agency action within
the meaning of the statute for purposes of 5 U.S.C. § 702);
Sanchez-Trujillo v. I.N.S. of U.S. Dep't of Justice, 620 F.
Supp. 1361, 1362-63 (D.C.N.C. 1985).

Second, Defendants argue that both Plaintiffs lack standing
because their injuries are not redressable.  They argue that
Plaintiffs truly seek to obtain some form of legal status for
Alencar, but that Alencar is: (1) statutorily ineligible for
adjustment of status based on his unauthorized employment in the
United Sates and failure to maintain a continued lawful status
in the United States; and (2) subject to a 10-year bar from
obtaining a visa overseas because he was unlawfully present in
the United States for more than one year.  See 8 U.S.C. §§ 1255;
1201(g)(1); 1182(a)(9)(B)(i)(II).  With no route to legal status
for Alencar, Defendants argue, Plaintiffs' claims are not
redressable.

Although Defendants are correct that Alencar is not able to

obtain the redress of legal status, this Court disagrees that
Plaintiffs lack standing on this basis.  Plaintiffs' Complaint
discretely seeks the approval of Plaintiffs' I-360 Petition.
This Court is capable of granting that specific and limited
relief assuming that, as alleged, Plaintiffs are entitled to
such relief aside from the Regulation's bar.  While, accepting
Defendants' arguments, any victory by Plaintiffs would be
pyrrhic, that does not alter the fact that this Court can grant
them the relief they do seek.

> B.   <u>Failure to State A Claim</u>

In addition to lack of standing, Defendants argue that the
Complaint fails to state a claim.  To survive a motion to
dismiss for failure to state a claim, "a complaint must contain
sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face."  <u>Sheridan v. NGK Metals
Corp.</u>, 609 F.3d 239, 262 n.27 (3d Cir. 2010) (quoting <u>Ashcroft
v. Iqbal</u>, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009) (internal
quotations omitted)).

Here, Defendants argue that: (1) Plaintiffs have not shown
that the Regulation is *ultra vires*; and (2) Plaintiffs have not
alleged facts establishing RFRA or constitutional violations.

The Court addresses each argument in turn.[6]

    1.   Ultra Vires Claim

In determining whether the Regulation is *ultra vires*, this Court must assess the Regulation under the principles of Chevron U.S.A., Inc. V. Natural Resources Def. Council, Inc., 467 U.S. 837 (1984).  Under step one of the Chevron analysis, the Court must ask whether Congress has spoken to the question at issue or "has explicitly left a gap for the agency to fill."  467 U.S. at 843-44.  In determining whether the language is plain or ambiguous, "the text of a statute must be considered in the larger context or structure of the statute in which it is found."  Alli v. Decker, 650 F.3d 1007, 1012 (3d Cir. 2011)(quotation and citation omitted).  If Congress has spoken to the issue unambiguously, then the Court must accept that statement as controlling.  Chevron, 467 U.S. at 843-44.  However, if the statute at issue is either silent or ambiguous,

---

[6]    This Court *sua sponte* raised an additional potential basis for dismissal for failure to state a claim that was not raised by the Defendants.  [Docket No. 23].  The Court observed that, under the statute, "special immigrant" religious worker status appears limited to individuals not already in the United States and Alencar has been present in the United States at all relevant times. 8 U.S.C. § 1101(a)(27)(C)(ii)(limiting special immigrant status to one who prospectively "seeks to enter the United States").  [Docket No. 24].  Because the parties had not addressed this issue, the Court ordered supplemental briefing on it.  [Docket No. 23].  In that briefing [Docket Nos. 24, 25], the parties agreed, however, that this was not an obstacle to Plaintiffs' claims.  Therefore, the Court declines to dismiss on this basis and considers any arguments that dismissal on this basis is warranted to be waived.

the Court must proceed to step two and consider whether the agency's interpretation is a reasonable and permissible construction of the statute.  <u>Id.</u>  Where the agency's interpretation is reasonable, the Court must defer to the agency.  <u>Id.</u> at 842–43.

Here, Plaintiffs claim that the Regulation is *ultra vires* because it improperly imposes an additional requirement beyond those mandated by the Statute.  Specifically, while the Statute merely requires that the immigrant be an individual who has been "carrying on" work for the past two years, the Regulation requires that any qualifying work performed in the United States be work that was performed under lawful immigration status.[7] Defendants argue that the "carrying on" language of the Statute is ambiguous or silent on the status of the work performed and that the Regulation supplies a reasonable construction of the statute to which this Court must defer.  This Court disagrees with the Defendants.

---

[7]    <u>Compare</u> 8 U.S.C. § 1101(a)(27)(C)(defining "special immigrant" as someone who, among other qualifications, has been "carrying on such vocation, professional work, or other work for at least" two years before a petition is filed) <u>with</u>  8 C.F.R. § 204.5(m)(4) and 8 C.F.R. § 204.5(m)(11)(requiring, to be eligible for classification as a special immigrant religious worker, that an alien must have been working in a qualified religious occupation, "either abroad or <u>in lawful immigration status</u> in the United States, . . . continuously for at least the two-year period preceding the filing of the petition"  and that "qualifying experience during the two years immediately preceding the petition[,] . . . if acquired in the United States, must have been <u>authorized under United States immigration law</u>.")(emphasis added).

14

The Court must first assess whether the statute speaks
directly to the question at issue.  It does.  Surveying both the
plain text of the Statute and the statutory context in which it
is found, the Statute is neither ambiguous, nor silent, and
Congress did <u>not</u> leave a gap for regulations to fill.  First,
with respect to the text of the Statute itself:

> (1) though "carrying on" has a broad and inclusive
>     meaning, its plain meaning is unambiguous (<u>See</u> <u>Empire</u>
>     <u>Kosher Poultry, Inc. v. U.S. Dep't of Agriculture</u>, 475
>     F. App'x 438, 443 (3d Cir. 2012)(finding the term
>     "express" to have an unambiguous meaning));
>
> (2) the Statute is not "silent" as to the legal status of
>     work performed in the United States – it is inclusive
>     of <u>all</u> work performed inside and outside the United
>     States, whether lawful or unlawful[8]; and
>
> (3) because the Statute is unambiguous, it does not
>     contain a "gap" for the agency to fill (<u>U.S. v. Home</u>
>     <u>Concrete & Supply, LLC</u>, 132 S.Ct. 1836, 1843
>     (2012)("The fact that a statute is unambiguous means
>     that there is no gap for the agency to fill and thus
>     no room for agency discretion.")(quotation and
>     citation omitted)).

Second, examining the statutory context does not reveal any
latent ambiguity.  Rather, it confirms that a plain reading of
the statute is warranted.  Congress has demonstrated its ability
to draft legislation that delineates between time spent in the
United States "lawfully" and unlawfully in the <u>specific</u> context

---

[8] Agencies "are not free to create exceptions to statutes" and then claim
that "the statute is silent as to whether the exception exists." <u>Ad Hoc</u>
<u>Shrimp Trade Auction Committee v. U.S.</u>, 596 F.3d 1365, 1373-74 (Fed.
Cir. 2010)(in dissent).  This is exactly what the Defendants have done.

of determining eligibility for "special immigrant" status.  See
8 U.S.C. § 1101(27)(a)(defining special immigrant as "an
immigrant, lawfully admitted for permanent residence, who is
returning from a temporary visit abroad")(emphasis added).  And,
more generally, Congress has shown its ability to draft
immigration legislation that bars relief for aliens who engaged
in unauthorized employment or are present unlawfully.  8 U.S.C.
§ 1255(k)(2)(prohibiting adjustment of status for aliens who
"engaged in unauthorized employment"); 8 U.S.C. §
1182(a)(9)(B)(i)(II)(prohibiting admission for 10 years for
aliens unlawfully present in the United States for 1 year or
more).  That it did not specifically do so here, in defining the
class of religious workers eligible for special immigrant status
(8 U.S.C. § 1101(27)(c)), is "compelling evidence" that
Congress' word choice was intentional.  Alli, 650 F.3d at 1012.

        This leaves the Court to assess the plain text of the
statute. That text is inconsistent with the Regulation because
the plain text of the statute solely requires that the alien
have "carr[ied] on" work without regard to the legal status of
that work.  Brown v. Gardner, 513 U.S. 115, 116-120
(1994)(concluding that imposition of regulatory "fault"
requirement on statute that required compensation for any

"injury," without regard to fault, was inconsistent with the plain language of statute).  Under these circumstances, the Regulation is *ultra vires*.  <u>Shia</u>, 849 F. Supp. 2d at 923. Therefore, on the facts alleged, Plaintiffs have plausibly stated an *ultra vires* claim and Defendants' motion to dismiss this claim must be denied.

### 2.   RFRA And Constitutional Claims

In contrast to Plaintiffs' *ultra vires* claim, Plaintiffs have failed to plausibly allege RFRA and constitutional claims. These claims instead solely consist of insufficient conclusory allegations.  Because conclusory allegations are insufficient on a motion to dismiss (<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010)), these claims are dismissed, without prejudice.

### III. Conclusion

For all these reasons, Defendants' motion to dismiss is GRANTED, in part, and DENIED, in part, as described above.

                                   s/Renée Marie Bumb
                                   RENÉE MARIE BUMB
                                   United States District Judge

Dated:    <u>January 14, 2013</u>

17